Are we missing somebody for Fiorillo? No, it looks like we're okay. If it please the Court, good afternoon. My name is Flora Edwards, and I represent the appellant. With the Court's permission, the first issue that I would like to address is the recall of the mandate. I'm aware of the recent decision of this Court in Carrington on September 11th of this year. But I'm also aware that in Carrington, this Court did not hold that relief would never be available in a particular case based on a showing of extraordinary circumstances. And the Court set forth a two-part test for extraordinary circumstances. Counsel, do you plan to focus mainly on this sentence issue, or do you want to talk about whether he should get relief on the merits because of the conflict? I would like to spend my time just at the beginning to very briefly go through the sentence issue, if the Court would permit me to do so, Your Honor. Oh, whatever. I have some questions about the conflict, and maybe we'll get to them, maybe not. I'll do this real, real quick. The two-part test, the evidence that the appellant was uniquely impacted by the guidelines and other inequities which distinguished that particular defendant from other defendants before Booker. And Fiorello really meets both tests. This is Fiorello's first felony offense. He and his co-defendant Flowers, and Flowers had a criminal history category of four. And according to the government, he's the leader of the entire organization. Fiorello ends up, because of the way they configured the conspiracy with the guideline calculation, Flowers ends up with a guideline calculation that's marginally lower than Fiorello. They both argue on appeal that the determination of the drug quantity by the court at sentencing violates apprending. This Court agreed and holds under the guideline that you have to apply the stacking provision. So then the Court applies Archdale and holds that because Flowers had not been sentenced to the bottom of the guidelines, notwithstanding the fact that the Court thought that that was the appropriate sentence, he was entitled to be resentenced. But Fiorello, who was sentenced to the bottom of the higher range only because the Court very clearly said he was compelled to do so by the guidelines, wasn't entitled to be resentenced. Flowers is resentenced with all the due process afforded by apprending, and he leaves the two co-defendants on exactly the same facts, in the same trial, with very, very different results. One defendant gets convicted and sentenced with all the due process afforded by apprending. Kagan. May I interrupt you, because I may be able to accelerate this. And you're relying on the Carrington case? The last Carrington case. The second one. The second one, yes. Okay. So I want to make sure that we're on the same page. We're on, absolutely, the September 11th, 2007 case, this very recent case. All the due process. He gets all the due process. And the other gets to languish in prison in the interest of finality. This even goes back to this Court's 1992 decision in Walter, and I just wanted to say that really, really quickly so that the Court could hear this. It is – if that's not a manifest injustice, Your Honor, I don't know what is. Anyway, now I'll be very happy to talk about the conflict of interest that I want. In the reduced time you have left. Yes, Your Honor. The test under Kyler is whether some plausible defense strategy or tactic might have been pursued but was not, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. There has to be a demonstration that an actual conflict of interest adversely affected his attorney's performance. Now, I tried to take the facts of this case and put them into that rule, and concretely I'm having trouble doing it. I can think of several possibilities. One is Tony Serra would have gotten Fiorillo to snitch out flowers in exchange for a deal, but there's no argument, there's no proffer of evidence that he would have, there's no affidavit that he would have pleaded, there's no affidavit that a deal was available, no nothing. Another possibility that I think was argued was he would have cross-examined flowers more aggressively. But he couldn't cross-examine flowers anyway because he didn't testify. And the third possibility is he would have asked the FBI agent who was the Los Angeles supplier, what did the informant tell you about the Los Angeles supplier. But most of us, I learned at my father's knee, never ask a question you don't know the answer to on cross. And I think most of us who have defended criminal cases know that. FBI, he probably didn't ask it because he was afraid the FBI agent would blast him. After that, I run out of ideas for how the conflict could have been actual as opposed to speculative. If I may, Your Honor, I've got a fourth alternative. This investigation started, no, I'm sorry, let me back up. Flowers was represented by Sarah, Tony Sarah, from 1990 to 1992. In that same period, the government, according to the PSR, was investigating Flowers in this case. And they had decided, the government, by 1991, which is precisely the period in which controlled the whole Oakland cocaine market, and he shared it with somebody named Lacey. We also find out that during this period, Flowers has a separate supplier of cocaine in Los Angeles. Now, what Sarah does is he moves to get the information regarding the informant, so he can develop an independent source. But he can't do that. Well, what else could he do? He can move the severance. Fat chance. Fat chance. Cocaine conspiracy case, you're going to get a severance for one of the co-conspirators. Good luck. Well, Your Honor, I can think of dozens of cases in almost all the circuits where the circuit has held that the prediction that that might not work is not a reason  I don't actually remember the argument. Maybe it's in there somewhere, that because of his conflict of interest, he didn't move for a severance, nor do I understand exactly why he wouldn't. Why he wouldn't move for a severance? Why the fact that he had represented Flowers during a critical period would deter Tony Serra from moving for a continuance for Fiorillo. Well, if he had moved for a severance, and if Flowers had either testified voluntarily or under subpoena, why would he do that? Incriminate himself? No. If Flowers' case goes first, then he is no longer in jeopardy for that particular conspiracy. But in any event, I can think of a number of cases, and I'm sorry I don't have the case in the Ninth Circuit, where the prediction that someone might assert his Fifth Circuit is not an excuse not to call them. If you believe that you need them, you should be able to do that. Tony Serra doesn't get the transcript from the in-camera hearing. We still don't have that transcript. He doesn't get the transcript. He doesn't really – he doesn't pursue it. He wasn't allowed to, was he? After the case was over, he could have done it on appeal. He could have, after he looked at it, had he not been convicted. The whole idea of the in-camera hearing is, while he's defending Fiorello, it's secret from him. Now, after the case is over, that's a different story. But he could have reopened on a Rule 33, Your Honor. In other words, had there been evidence that he could have presented, the problem is, is that he couldn't present that evidence, because the moment he presents the evidence, he is in a world of conflicting loyalties to his former client. He can't question. And what evidence are you referring to? The evidence that Flowers, indeed, if the government's allegation is correct, was the major supplier of cocaine. And if he was the major supplier of cocaine – the major distributor, I'm sorry, of cocaine, and if he was that major distributor of cocaine, then he had a supplier. And that supplier was in Los Angeles, and that supplier was not Fiorello. And what evidence do you have that that supplier was not Fiorello? Well, I think the evidence that we have is that we have an informant A who talks about the supplier. Right. There is nothing in any record that ties Fiorello to anything south of San Francisco or south of Oakland. The judge found that informant A really didn't – was not a precipient witness and wouldn't have added anything. Well, that is what the Court said. But then the problem is, is that Sarah couldn't explore it any further. He couldn't explore it with Agent Broderick. He couldn't ask for a severance. In your habeas petition, did you go ahead and get the transcript and show why that's not correct? Oh, of course. That's in the transcript, and I can – if I may, I can direct you to it. Sure. Okay. This is the – the Broderick Cross at A609. That's the – we're looking at B. Rose, Excerpt 609? Yeah. The appendix. That's the appellant's appendix at 609. And you're reading from your brief?  On my brief. I'm already on my brief. Okay. I'm arguing on page 22. What is the import of this? That Sarah, without any independent source, was limited in his cross-examination of Broderick. Well, this is – I thought what Judge Silverman was asking about was what evidence was there that Sarah could have and perhaps would have brought out if it were not for the conflict. And you were referring us to the transcript of the in-camera hearing. But you're referring us, it looks like, to the part of the trial where Sarah cross-examines the FBI agent. I think to – respectfully, Your Honor, I believe this puts the appellant in an almost impossible position. And I'm quoting from this court from Allen. Well, I take it then you can't – you can't put your finger on – You can't put your finger on what the attorney could have or should have done, especially – You can't tell us what Informant A would have said. That's correct. That's correct. My understanding of the argument in your brief is that you're thinking that Informant A would have said that Flowers had a separate supplier in Los Angeles, separate from your client, correct? Yes. But if I'm – but the only information I've got that's in the record that I've got that's relevant to that is on page 34 of Agent Broderick's affidavit. I'm on excerpts of record A601. The last full paragraph toward the bottom of that page that begins Informant A further. I'll wait until you get there. And the fact remains, right. Okay. So just read along with me. It's a short paragraph. This is Broderick's affidavit describing what Informant A has to say about supplier or suppliers in Los Angeles. Informant A further stated that Emanuel Lacy has run into trouble with his source of cocaine and is only managing to sell ounces of cocaine along with heroin. He stated that Flowers has a separate supplier who came from Los Angeles supplying him in kilogram quantities. Well, that doesn't mean separate from Fiorillo. That means separate from Lacy's supplier. Yes, except that if you go through the entire trial transcript, if you go through the pre-sentence report, there is no nexus whatsoever between Fiorillo and Los Angeles. Fiorillo is up in San Jose. Fiorillo comes down as far as Oakland maybe. But there is nothing that connects him to Los Angeles. Well, I guess we'll find out. And since Sarah doesn't ---- I'm confused here about what you're saying Sarah would have done if he didn't have a conflict. You're saying he would have asked the FBI agent Broderick, even though he didn't know the answer, who was the Los Angeles supplier? Sarah could have pressed him on who the Los Angeles supplier is. You say pressed. Do you mean asked? Asked, yes. Yes, Your Honor. In trial. In trial, without knowing the answer. Well, let's put it this way. And if he asks, he can't object when the FBI agent says all indications point to your client. If Broderick already has said at trial that Fiorillo was Sarah's supplier of cocaine, he says that. Wait. If Broderick ---- Testifies to that. He testified. Right. He testifies to that. But now we're getting to the Los Angeles supplier. Right. Now we haven't gotten to Los Angeles yet.   So he's not a competent witness. Right. And he knows that the informant A has no personal knowledge. Right. Now ---- So he's not a competent witness. Broderick ---- Sarah then doesn't ask him if he knows anything about informant A in the affidavit. If he asks him about informant A, he's going to ask him who informant A identified as. Counsel, why would he ask him about informant A, even if he knew informant A's name? It seems to me if informant A has no personal knowledge, he's not a precipient witness, then all he's good for is to the police as a tipster. I don't see where he helps Flower's case or Fiorello's case. Since Sarah never, even after the trial, obtained or had the record unsealed which she was able to do, but didn't do, since Sarah never presses Broderick on the point, the only thing we have ---- You represent Fiorello after the trial. You can obtain the record. So what's in there that shows what's in there? But by then the issue had already been decided on appeal. There was no way to bring it in as anything collateral. It was over. I thought this is collateral. No. But this wasn't collateral. Why is this collateral? This is part of the record. Wait. You're saying, yeah, I couldn't get it during trial because it was secret. It was in camera. Oh, Your Honor, I'm sorry. But after trial, he could have gotten it. So I'm thinking, so you could have gotten it. Well, I could only get it if the judge orders a hearing. And that's really my next point. The judge dismisses the whole thing without a hearing. There is no hearing. Sarah, who fills out interrogatory ---- So what have you got now that you've had all this time to get what Sarah missed? What have you got? What I have is a denial of a hearing which would have permitted me to issue a subpoena under the hearing to get the rest of the information. But I didn't get a hearing, so I couldn't get that. If there was no hearing, how am I going to get it? You have to show that you've got something. Sure. Something colorable to get to a hearing. But if I have informant A and I have Sarah ---- I don't see what anyone in the Flowers gang would want informant A for except to kill him, maybe. He's not a precipient witness. He can't testify to anything important. It's interesting that Sarah, in his interrogatories, which, by the way, he answers while he is under a waiting sentence himself. But he ---- Sarah, in his interrogatories, doesn't remember if he ever discussed the issue of severance. He doesn't remember if he ever ---- he doesn't remember if he knew who informant A was, if he knew who the supplier was. Let me ask you something concrete. Is there anything in the record to show that Fiorillo would have snitched Flowers out or that he would have ---- or that any deal was ever offered to him to snitch Flowers out in exchange for a break? No, Your Honor. No, Your Honor. That's usually what you want a separate lawyer for who has no divided loyalties. No, Your Honor. There is not. There is not. I would like to talk about a hearing for just a moment, if I can. The judge relied on ---- Judge Quackenbush relied on Sarah's interrogatories and his answer that he would never compromise a client. And that was ---- that he remembered, that he would never compromise a client. This is what he doesn't remember. He doesn't remember if he learned during the course of his representation of Flowers if Flowers had a separate cocaine dealer. He doesn't remember if he decided that he wouldn't move for severance. And whether or not ---- I mean, this Court ---- Judge Quackenbush granted a mistrial at one point. Judge Quackenbush might well have granted a severance if he could have made a colorable claim. But he never said that he was going to move for severance because he couldn't have examined Flowers without revealing confidential information. He never says that. And the argument is right there from Alberni, this Court's decision in Alberni. It was remanded for an evidentiary hearing. Here the ---- by the way, the Court applied a more permissive standard holding that once an actual conflict is shown, you can presume prejudice. And here there is an alternative defense strategy, Your Honor. He could have moved for severance. Roberts. Well, I'm trying to follow this in your brief, and I can't find the pages where you argue that you should have been giving a hearing. In the brief, it's on pages, I think, 20 to 23 on my brief. Thanks. I believe. All right. Hold on. One second, Your Honor. No. No. I'm sorry. Let me just ---- just give me one second. I will find it. 27. Page 27. And on my reply, I have it right there. I want it in the blue brief. In the blue brief? That's where you have to raise issues. It's here. I'm not prepared on this issue, and I'm thinking how could I have overlooked it, and I can't find it in the brief. I will find it, Your Honor. I'm sorry. Thank you, counsel. My apologies. Well, your time is up now, so when you ---- 30 seconds, we'll rebuttal like everybody else and give us pages. Thank you, Your Honor. Counsel. May it please the Court. My name is Mary Jean Chan, and I represent the United States in this appeal. I think Judge Kleinfeld, as well as the other judges on this panel, have put your fingers on the issue here, which is that there's nothing in the facts that have been proffered by Mr. Fiorello or anybody else that supports this notion that Mr. Serra, his trial attorney, ever actively represented any conflicting interests. That is, there was ever any actual conflict, and that is the constitutional predicate for the ineffective assistance of counsel claim. With respect to the point that Ms. Edwards was raising about the tapes showing informant A being a supplier, an alternate supplier in L.A., and that there being no connection drawn of Mr. Fiorello to L.A., that's simply not true. If you refer to the excerpts of the government at 155, for example, which is the closing argument made by the prosecutor in this case, it's very clear that what the government's case showed was that there were phone calls between Mr. Flowers and Mr. Fiorello, and that after that, Mr. Hermanek would be communicated to by Mr. Fiorello, at which point Mr. Hermanek would go down to L.A. and get the cocaine and then come back. After he came back to the Bay Area, he would then talk to Mr. Fiorello, and Mr. Fiorello would then talk to Mr. Flowers. So there was a connection to L.A. So the record actually shows that there is a connection between Mr. Fiorello and L.A. But going back again to the main point, which is just that Mr. Fiorello has never shown any actual conflict. In fact, Mr. Fiorello and Mr. Flowers held a coordinated defense. It was essentially a joint defense. This is the closing argument you just referred us to. That's correct, Your Honor. And I don't have the exact citation to what that refers to within the transcript. If Your Honor would like it, I could try to dig that up after the argument. But there is a link between L.A. and Mr. Fiorello is the point I wanted to make. The idea is that Fiorello was the L.A. supplier in the sense that Flowers would call Fiorello, Fiorello would send Hermannek down to L.A. to pick up the drugs, and then Hermannek would come back with the drugs from somebody in L.A. I don't know who the supplier in L.A. was, but the idea is that because there was this L.A. connection, it very well might have been related to Mr. Fiorello. So if we had been able to call informant A or been able to probe that, that might have simply strengthened the connection of Mr. Fiorello to the cocaine charges. But your argument, and you've got evidence to support, is that Fiorello sends Hermannek down to Los Angeles, Hermannek comes back up with cocaine. Where Hermannek gets it, I guess we don't quite know. I don't know. That's correct. Oh, you mean Flowers didn't turn state's evidence and tell you? No, no, Your Honor. So as I was saying before, Mr. Flowers and Mr. Fiorello had a coordinated defense. Both of them claimed that they had no connection to cocaine, that what they were involved in was steroids and marijuana. Now, this defense was an obvious and logical and probably the strongest defense that Mr. Serra could have come up with for Mr. Fiorello in light of the government's evidence, which was numerous tapes, incriminating calls, having Mr. Fiorello and Mr. Flowers on the phone together talking about some substance. So to the extent that Mr. Fiorello pointed the finger at Mr. Flowers and said, look, this guy is intimately connected with cocaine, that would have incriminated him as well. So the idea is... And I think this would have been inconsistent with the defense they presented. They basically had to choose one or the other. Either Flowers had a cocaine supplier in Los Angeles who wasn't Mr. Fiorello or they weren't dealing with cocaine at all. So they decided, listen, we're just not going to be dealing with cocaine at all. But if that's true, maybe there's a problem for you. That is, Flowers couldn't say simultaneously, well, I wasn't dealing with cocaine, but I had a separate supplier. Fiorello could say, well, I wasn't dealing with cocaine. I was just dealing with steroids. But Flowers, he was dealing with some cocaine. That was a totally separate deal. He had a separate supplier for that. Why couldn't Sarah have made that defense as a plausible defense? I don't think that would have been a plausible defense because the evidence, as I said before, between the two of them was so intimately connected. So you have the two of them on the phone talking about some illegal substance. So you're saying the joint defense was to say whatever substance they're talking about on the phone, it's not cocaine, which is the only substance they're charged with. And if he had said, well, I'm not, but Flowers is a cocaine dealer, then it would have suggested a possible inference that when they talked on the phone, it was about steroids, but Flowers separately was a cocaine dealer. I don't think it's not an obvious defense, right. Or it could have meant when they were talking about on the phone was cocaine for both of them. Incidentally, how would you, did anyone testify? Did any of the accused conspirators testify? No, Judge Kleinfeld, and I think that's a good point. It's hard to say what you were doing and what other people are doing if you don't say anything. Well, I was going to say that the point of that is that there's no conflict there because one of the main ways that there would be a conflict for Mr. Serra is if, let's say, Mr. Flowers or Mr. Pirello testified and he had to cross-examine one or the other. And none of them testified. As in Lightborn, where you had a husband and wife, which is somewhat different, but you had a group of people who were charged with conspiracy who decided to be loyal together to hold a coordinated defense. They then waived their right to conflict-free counsel, and that's exactly what happened here. In fact, both Mr. Flowers and Mr. Pirello unequivocally waived their right to conflict-free counsel. Mr. Pirello did that in order to retain services of his counsel of choice, Mr. Serra, and he did this both under the advisement of Mr. Serra, who advised him of the different potential conflicts, as well as Judge Smith in district court. There was a colloquy. He did this willingly, and as in Martinez, where this court says, once you've done that, if you have a valid waiver, you're not free later on when it's strategically advantageous to renege on that. And that's really what he's trying to do. So we do have a waiver where he unequivocally says, whatever the conflicts there are, I waive them. And, in fact, he didn't anticipate any real conflicts coming up because he had a joint defense. So because their interests were really aligned, there was really no occasion for Mr. Serra. Let me ask the whole question. You say they're aligned, but maybe they weren't. And if there truly is some conflict, if it truly is the case, for example, that Tony Serra knows that Flowers does have a cocaine supplier down in Los Angeles who is not connected to Pirello, well, then there's a fatal conflict. How are we so sure of that that we can just say, oh, go away, you're done? Your Honor, I think that there's a burden upon Mr. Pirello, first of all, to provide some facts. And here he hasn't provided anything. There's some speculation. And it isn't even as though Mr. Pirello has said Mr. Serra does know who this identity of this person is. His counsel has said it's possible and Mr. Serra may well have learned this identity during his representation. He hasn't offered any facts that would allow us to get to the point where we have an evidentiary hearing. What are we supposed to do with Mr. Serra's answers to all these questions, which consist of they start out to be I don't know, but pretty soon I don't know gets so boring to write that they just turn into ditto marks. I mean, he has an extraordinary memory, that is to say extraordinary non-memory. Well, it was 10 years ago. I hardly even remember the guy's name. It was 10 years ago, and he does, as he said, try pieces back to back. I can remember page numbers that I cross-examined doctors about from 20 years ago. Would we all have that memory? Most judges would think Serra was not telling the truth about just how vacant his memory was. The district court didn't actively rely on the interrogatories. That's the first thing I want to make a note of. Secondly, under Williams v. Woodford, he had the discretion to expand the record only by interrogatories. Thirdly, we never have the defendant making his burden for an evidentiary hearing by putting any facts in dispute. Could Fiorillo in this proceeding have taken a deposition of Serra or sought access to the in-camera hearing from before the trial? I don't see why not. I mean, he had every opportunity to put forward some declarations, some facts. He had all this opportunity. He never took it. And I wanted to return briefly to Judge Fletcher's point, too, about what if this were true? What if he knew something? Well, it didn't. You could make mincemeat of the guy. Pardon? Who were you married to 10 years ago? I don't remember. Oh, no. Were you in jail or out of jail 10 years ago? I don't remember. That's not the – that's actually not the point that I was referring to. The point was that let's say Mr. Serra did know something from his prior representation. Would Mr. Fiorillo therefore be entitled to that as part of his Sixth Amendment? And no, he is not. The point is that Mr. Fiorillo is entitled to assistance of counsel who is conflict-free. He waived that. But he's not entitled to the benefit of a conflicted counsel, which is really what he's arguing here. No other attorney would have known anything about Mr. Flower Supplier. Let me ask you a little flip side of that. You're saying he's not entitled to the benefit of being able to use confidential communications from Flowers to Serra. In a previous case, because nobody who wasn't conflicted would have had those confidential communications. That's correct. And that's a report by Schrader, yes. Okay. I was wondering about another thing. Suppose a judge, I think it was Judge Smith, at the hearing said, boy, I'm just not satisfied and I look at these interrogatories and they look phony to me, the answers to interrogatories. I'm not – or I guess she didn't see the answers to interrogatories. This is actually Judge Clackenbush at this point. But let me back up to Smith. Suppose she had not been satisfied with Serra's answers at that hearing. I think he talked about how he was hungry for lunch. I'm sorry? I think Serra talked about how he was hungry for lunch when Judge Fern Smith questioned him at her hearing before the trial. He has a flippant style, yes. If she had said, I think there is a conflict of interest here that cannot be waived, would that mean that even though Fiorillo had said, I want Tony Serra as my lawyer, the judge would have said, no, you can't have Tony Serra as your lawyer. You have to get some lawyer other than the one you want. Is that what we're talking about? If she had made a finding that the possibility of the conflict was not remote, that it was highly likely to manifest, and that it would violate Mr. Fiorillo's Sixth Amendment rights, I think it would have been within her discretion to do that. But the cases in which that has really – Is that the remedy, if there is an insufficiently waived potential conflict, make the defendant get a different lawyer? Yes. Yes. And in fact, in the Allen case, I believe it was, the court, this Ninth Circuit also said that because they actually found that the waiver in that case was not sufficient. They found that there was a conflict initially, but then the conflicted counsel had been substituted by independent counsel, I think a person named Cullen. And because of that, the court said, we find that he's had all the remedy that he really would have been entitled to. I'm trying to think, when we look back at it in a post-conviction relief proceeding. Yes. Are we looking at a kind of scilla and charybdis? The judge violates the defendant's rights by depriving them of the lawyer of his choice if the judge says the lawyer is conflicted out erroneously, and the judge violates the defendant's constitutional right to an unconflicted lawyer if she does not order the lawyer out of the case and it's erroneous? Well, the judge has to have some reason for finding it to be an actual conflict or that the conflict is very likely. And that's not the case we had here. In fact, there was an actual conflict. If the judge errs in either direction, it's a constitutional violation? If the judge errs by saying that there is a high likelihood and deprives the defendant of his choice of counsel. But I think it's less so the other way. I mean, as with the Ferretta context, you can waive your right to, I guess, effective counsel if you are knowing and voluntary about it. And I think in some ways that might be analogous to this situation. So he, in any case, Mr. Fiorillo really took on the risk to himself. And I think it was a very small risk. Does our standard for reviewing that give ñ I can't remember exactly how we do this. And I can't remember whether there's any room for us to accord some discretion to the trial judge who has to make that decision. The trial court does have discretion, yes. There's quite a lot of discretion. But also the case law that's really been dealing with this area talks a lot about Rule 44. And usually that is a multiple representation case, where you have an attorney simultaneously representing two clients, let's say, or a client and a witness, both identical at the same time. Here you have a successive representation situation, which the Supreme Court has explicitly said has much less potential for these kinds of conflicts or for actual conflicts. And I think it's clear in this case that this is an example of why they would say that. Now, cases like this must come up all the time with state public defenders. Because, well, when I did criminal defense, a lot of them lived in the same apartment. I still remember their apartment number. You get the same crowd all the time. But I didn't notice any precedents just directly in point on a successive representation case like this. In what respect, Your Honor? Some Supreme Court decision saying how Kyler v. Sullivan applies to a successive representation case that's factually pretty much on all fours with this. A Supreme Court case. I don't think that there has been one. But I think, well, with respect to the actual conflict, we have cases in the Ninth Circuit that are instructive. So, for example, in the Fitzpatrick case, you had a situation where the defendant didn't blame his co-defendant, even though it was a successive situation. And in that situation, the circuit said, well, there was a conflict because the obvious defense would have been to blame this other person, and it wasn't taken. And it's very different than in this case because we have people in the same trial in a conspiracy where that kind of blame shifting would have most likely backfired. So the standard is that Mr. Fiorello has to show that Mr. Serra failed to take some viable alternative trial strategy, not some theoretically possible strategy, but something that would have made sense within the context, the factual context of this case, and he hasn't. The way you actually do get a break in dope conspiracies is snitch somebody out. And as your Honor pointed out before, there's no showing that Mr. Fiorello wanted to do that. He could have put out a declaration saying, you know, I told Mr. Serra I want to snitch this person out. I think that we're totally in different boats. Nothing of the sort. There's nothing that says that he would have wanted to point the finger at him or do anything. So there's no conflict. This is completely speculative, and there really is no actual conflict, which, as I started off with, is the constitutional predicate. Let me ask you this. Does it – is there in existence a tape or a transcript of the hearing before then-Magistrate Judge Hamilton? Does such a tape or transcript exist? I believe there does, because I think what happened was that after Judge – Magistrate Hamilton had reviewed it and came up with her recommendation, Judge Smith – I think it was Judge Smith – then reviewed that and agreed that there was no basis for a hearing. Have you listened to that tape or seen that transcript? I have not. Why not? I – I think it's still sealed, and I didn't go to look for it. I didn't realize that it would be an issue. Well, it seems to me that – But does it matter? I mean, isn't there a burden to come forward with it? Yes. I mean, if there's a smoking gun, that's where it's likely to be. That is to say, the whole issue, really, as I get it, comes down to, did Tony Serra have some knowledge or some strong reason to suspect that there was a separate supplier of cocaine down there in Los Angeles, which would mean that Flowers was a cocaine dealer, he had his own supplier, and that Fiorillo was just doing marijuana and steroids. And that tape, which is the tape of the transcript with informant A, well, it's either on that tape or it's not. And if it's not, I think then Tony Serra's probably not conflicted. If it's there, well, then he is. Well, the district court – I didn't listen to it, but the district court did, as well as did the magistrate judge, and they didn't find that there was any information. But they did back at the trial time. Nobody did it – nobody's done it on habeas. Is that correct? As far as I know, nobody has looked at it on habeas. That's right. And when magistrate judge Hamilton, now district judge Hamilton, heard it, and when Judge Smith reviewed it, they had what they thought was a waiver, was to say any waiver of conflict. So they weren't – I don't know if they were listening to that for purposes of determining whether or not Tony Serra was pulling his punches in his defense. They weren't looking at it in this context, but they were listening to it in the context of Mr. Serra making requests to find out the identity of this informant A, and whether – and specifically Mr. Serra asked, did he provide the name of an informant and did the informant A provide the name of his source or the name of that particular person. Right. And it wasn't. So the district court – And they were listening – and they were listening – they were hearing that – they held that hearing at the request of Mr. Serra. They did. Yeah, yeah. So there's really no reason for us to speculate that Mr. Serra was doing this as a charade, which is really what you would have to accept, this proposition that Mr. Serra made these inquiries in order to come up with some front to provide knowledge that he actually knew. I mean, it's very, very circuitous. Your Honors, I see I've run out of time, and I wanted just to briefly respond to Ms. Edwards' remarks on the sentencing. Unless this Court is inclined to expand the certificate of appealability on this and find that Carrington really doesn't apply to this situation and that even though Cruz and Carrington both specifically say that Booker is not retroactive to – not retroactively applicable to collateral appeals, then I won't really speak on that. But I would say simply that given Mr. Fiorillo's unequivocal waiver, given that there's been no showing of any actual effect, even to warrant going to an evidentiary hearing on either this conflict having to do with prior representation of Flowers or Mr. Serra's tax violations, the government would ask this Court to affirm. Thank you. And may I just very, very briefly, page 23, and that is where I say that there is no – the interrogatories are not an excuse for – a substitute for a hearing. The fact that they decided on a coordinated defense, that was the only defense that they could have given Serra's particular conflict. And when we talk about the waiver, this is what was represented to the defendants at waiver, and I'm quoting. And this is page 6 and 7 of the brief, and it's from our appendix 576. There's no information gathered from any of these past representations that in any way hurts or damages present clients in any manner. Defendants understand there's an appearance of conflict created simply by the past attorney-client relationship. This is what the clients heard when they waived. And they said, well, that sounds fine. What they – what Fiorillo didn't hear is that while Serra is representing Flowers, Flowers is supposed to be, according to the government, the – a major, major dealer in cocaine, and then we find the separate hearing, the separate source from informant A. And it makes sense that he would try very hard. But your evidence of separate source is the Broderick Affidavit? Is the Broderick Affidavit. Is that the language that I just read you? That's correct. But that language says to me quite unmistakably that separate means separate from Lacey rather than separate from Fiorillo. Now, on page A493 and 494, which is the 2255 motion, we specifically request a right to conduct an evidentiary hearing, and we specifically request the right to subpoena documents for that hearing. We were denied that by the Court. If we had a hearing, we would have subpoenaed the document. The only thing I was able to get from the Court were some tapes. That was the only thing, and that took almost eight months of struggling. You say some tapes. Tapes of what? Taped conversations between Flowers and Fiorillo to examine the originals.  I believe that was done, oh, gosh, all the way back. That was done by sort of a letter motion, I think so. I think, Your Honor, but I don't want to make that representation. We're going back. You made a motion to get the magistrate judge transcript? Your Honor, I don't recall. I really don't recall, Your Honor. Okay. I don't want to misrepresent that to the Court. Thank you, counsel. Thank you. The United States v. Fiorillo was submitted. We are adjourned for the day.
judges: Kleinfeld, Silverman, Fletcher